[Cite as *State v. Heard*, 2014-Ohio-4643.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130789 |
| | | TRIAL NO. B-1303226 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| KARL HEARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  October 22, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     This is an appeal from a conviction following a bench trial for failure to provide notice of a change of address under Ohio's sex-offender-verification law. We are compelled to reverse the conviction because the only evidence at trial tending to prove the charge was hearsay.   While the trial court properly allowed the admission of this hearsay evidence for impeachment purposes, it should not have considered the hearsay as substantive evidence of the defendant's guilt.   As a consequence, we reverse the conviction and discharge the defendant from further prosecution.

## I.  The Trial

{¶2}     Karl Heard was convicted of attempted rape in 1992.  As a result of the conviction, he was required to register as a sexually oriented offender, and to provide notification to the sheriff's office when he changed his residence.  In March 2013, Mr. Heard notified the sheriff's office that he was residing at 2586 Seegar Avenue, a property owned by Stanley Thompson. On May 24, 2013, Police Officer Adam Breeze went to the residence to verify that Mr. Heard lived there.  Mr. Thompson told the officer that Mr. Heard no longer lived there, and Mr. Heard was subsequently charged with failure to provide notice of a change of address.  *See* R.C. 2950.05.

{¶3}     The case was tried to a judge sitting without a jury.  During opening statements, Mr. Heard's counsel told the court that Mr. Thompson would testify that Mr. Heard did live on his property—not in the house itself, but rather in a truck or a shed on the property.  Counsel also suggested that Officer Breeze would testify about what Mr. Thompson told him when he visited the house, but that these prior

2

inconsistent statements could be considered only for impeachment of Mr. Thompson's credibility, not as substantive evidence of Mr. Heard's guilt.

{¶4} The case unfolded like Mr. Heard's counsel said it would. Mr. Thompson testified that when he told Officer Breeze that Mr. Heard did not live there, he meant that he didn't live there "as far as the house is concerned." Rather than living in the house, Mr. Heard "stayed in his truck next door, or in the shed, because there was a bed in the shed." Mr. Thompson had asked him to leave the house "[b]ecause of certain things that he violated, you know, rules and things like that." Mr. Thompson stated that "next door" shared the same address as 2586 Seegar Avenue. Mr. Thompson added that Mr. Heard sometimes stayed downtown or with his sister, but he did not indicate how often this occurred. Mr. Thompson never checked to see if Mr. Heard was sleeping in his truck or in the shed on his property, but maintained that "for the most part" he assumed Mr. Heard stayed there because when Mr. Thompson went outside late in the morning, Mr. Heard's truck was there. Mr. Thompson acknowledged having signed a "Sex Offender Residence Verification Form" upon which was marked the box stating "Subject is not living here."

{¶5} Officer Breeze testified about verifying Mr. Heard's residence. He stated that when he asked Mr. Thompson if Mr. Heard was living at his address, Mr. Thompson replied "No, he's not. He's staying with his sister down in Price Hill." When asked how long Mr. Heard had been gone, Mr. Thompson stated, "He's been gone for months." Based on these statements, Officer Breeze noted on the verification form: "stays @ Livingston. Been gone for months. Half sister in Price Hill." Officer Breeze testified that he had seen a shed and a van on Mr. Thompson's property, but did not check to see if any of Mr. Heard's personal belongings were

3

there. Following Officer Breeze's testimony, the court admitted the verification form into evidence with no objection from Mr. Heard.

{¶6} Mr. Heard's counsel made a Crim.R. 29 motion for an acquittal, asserting that because the statements made by Mr. Thompson as reported by Officer Breeze could be used for impeachment purposes only, the state had not offered sufficient evidence that Mr. Heard had moved from Mr. Thompson's property, triggering his duty to notify the sheriff under R.C. 2950.05. The court overruled the motion.

{¶7} During closing argument, counsel reiterated, "[The state has] no other evidence than Mr. Thompson. It's impeachment evidence only." The court disagreed, concluding that the verification form was properly admitted as a business record and that the statement—"stays @ Livingston. Been gone for months. Half sister in Price Hill"—was not inadmissible hearsay.

{¶8} The trial court found Mr. Heard guilty. In announcing its decision, the court explained that the evidentiary basis of its verdict was (1) the statements made by Mr. Thompson during Officer Breeze's visit to the property as recounted at trial by Officer Breeze, and (2) Officer Breeze's note on the sex-offender-verification form recounting what Mr. Thompson had told him during his visit to the property.

## II. The Trial Court Erred in Considering Hearsay Statements as Substantive Evidence

{¶9} In Mr. Heard's first assignment of error, he contends that the trial court erred when it overruled his Crim.R. 29 motion for an acquittal.

{¶10} The essence of Mr. Heard's argument is that the court improperly considered prior inconsistent statements of Mr. Thompson as substantive evidence of his guilt. He contends that the trial court should not have admitted the "Sex

Offender Residence Verification Form" and that the court should not have considered Mr. Thompson's statement recorded on the form—that Mr. Heard "stays @ Livingston. Been gone for months. Half sister in Price Hill"—as substantive evidence of guilt. He likewise maintains that the court should not have considered Mr. Thompson's statements as testified to by Officer Breeze as substantive evidence. Mr. Heard argues that without the statements, there was not sufficient evidence upon which to conclude that he had changed residences without notifying the sheriff's office.

## A. Officer Breeze's Statements

{¶11} We consider Officer Breeze's testimony first. Mr. Heard did not object to Officer Breeze's testimony about Mr. Thompson's statements, but did make clear throughout the trial his position that the statements could only be considered for impeachment purposes. Mr. Heard is correct in this regard. Although the statements were properly admissible as prior inconsistent statements, *see* Evid.R. 613, the use of prior inconsistent statements is limited. "[W]hen a prior inconsistent statement is offered for the purpose of impeachment, the trier of fact may only consider the prior statement as substantive evidence if the prior statement is not inadmissible as hearsay." *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, ¶ 40, citing Evid.R. 801, 802, 803 and 804, and *Dayton v. Combs*, 94 Ohio App.3d 291, 640 N.E.2d 863 (2d Dist.1993). Here, Mr. Thompson's statements to Officer Breeze were hearsay and could be considered only for purposes of impeachment. *See* Evid.R. 801 and 803.

{¶12} But the court's statements while announcing its verdict indicate that its consideration of Mr. Thompson's statements to Officer Breeze was not limited to the impeachment of Mr. Thompson's credibility. To the extent that it considered

the statements made by Mr. Thompson to Officer Breeze as substantive evidence of Mr. Heard's guilt, the court erred.

## B. The Verification Form

{¶13} The court also erred when it considered Mr. Thompson's statement contained within the sex-offender-verification form filled out by Officer Breeze. The trial court found the form admissible under an exception to the hearsay rule, and then went on to consider Mr. Thompson's statement recorded on the form as substantive evidence of guilt. This was a mistake on two levels.

{¶14} Although the trial court referred to the "business records" exception, admission of the report is more properly considered under Evid.R. 803(8), which provides a hearsay exception for public records and reports. That section, however, expressly excludes "in criminal cases [records of] matters observed by police officers and other law enforcement personnel, unless offered by defendant[.]" *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 111. The rule prohibits introduction of reports that "recite an officer's observations of criminal activities or observations made as a part of an investigation of criminal activities." *State v. Ward*, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984). The purpose of the verification form was "confirming the offender's residence." Thus, the court was incorrect in its conclusion that the verification form could be admitted as an exception to the hearsay rule.

{¶15} But the larger problem was the consideration of the hearsay statement by Mr. Thompson within the report as substantive evidence of guilt. Even if the verification form had been properly admitted—which it was not—Mr. Thompson's statement within the report constituted what has been called "double hearsay" or "hearsay within hearsay." The statement could only be admissible if it independently

conformed with an exception to the hearsay rule. *See* Evid.R. 805. No such exception was present, and thus the evidence could only be considered for impeachment purposes. The court erred by acting otherwise.

### III. The Evidence Was Insufficient to Convict Mr. Heard

{¶16} Once Mr. Thompson's statements to Officer Breeze and the notation within the verification form are removed from consideration, the state offered no evidence that Mr. Heard no longer resided at 2586 Seegar Avenue. The state put on two witnesses—Officer Breeze and Mr. Thompson. Officer Breeze did not offer any evidence of Mr. Heard's guilt apart from the hearsay statements. His investigation at the address was cursory. He testified that he had not looked in the shed or the truck on Mr. Thompson's property to see if there was any sign that Mr. Heard lived there. According to Officer Breeze, the registry of an address meant that a sex offender lived in the house on the property. But the plain language of the statute does not include such a requirement. R.C. 2950.05.

{¶17} Mr. Thompson testified that Mr. Heard lived at the address where he said he did. The trier of fact was entitled to disregard his testimony in light of the impeachment evidence. But to convict Mr. Heard there had to be some admissible, substantive evidence of the crime. There was none.

{¶18} Thus, we conclude that the state failed to present sufficient evidence that Mr. Heard had changed his address from 2586 Seegar Avenue. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The first assignment of error is sustained. Because our resolution of the first assignment is dispositive, we do not consider the second assignment of error. The judgment of the trial court is reversed, and Mr. Heard is discharged from further prosecution.

Judgment reversed and appellant discharged.

**CUNNINGHAM, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

