[Cite as *State v. Baskin*, 2019-Ohio-2071.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,              CASE NO. 1-18-23

    v.

DEANDRE T. BASKIN,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2017 0397

Judgment Affirmed

Date of Decision: May 28, 2019

APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

    *Jana E. Emerick* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Deandre T. Baskin ("Baskin"), appeals the April 19, 2018 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an incident on December 3, 2017 during which Baskin trespassed in the residence of the victim, T.H., caused her physical harm, and prevented her from leaving or contacting law enforcement. In particular, when T.H. returned to her residence the evening of the incident, Baskin jumped out of a bedroom closet and punched her in the face. To escape Baskin, T.H. told him that she needed to go to the Dollar Tree store to purchase bandages for the injury she sustained to her leg during their scuffle. While at the Dollar Tree store, T.H. was eventually able to escape from Baskin by leaving him at the store. Baskin and T.H., who share a child, have a history of domestic disputes. Because of that history, T.H. had a protection order in effect against Baskin.

{¶3} On January 11, 2018, the Allen County Grand Jury indicted Baskin on four counts: Count One of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony; Count Two of abduction in violation of R.C. 2905.02(A)(2), (C), a third-degree felony; Count Three of domestic violence in violation of R.C. 2919.25(A), (D)(3), a fourth-degree felony; and Count Four of violating a protection order in violation of R.C. 2919.27(A)(1), (B)(3)(c), a fifth-

degree felony. (Doc. No. 3). Baskin appeared for arraignment on January 19, 2018 and entered pleas of not guilty. (Doc. No. 10).

{¶4} On February 28, 2018, the State filed a notice of its intent to use "other acts evidence" under Evid.R. 404(B). (Doc. No. 48).

{¶5} On March 2, 2018, the State filed a motion requesting that the trial court issue an arrest warrant for T.H. as a material witness. (Doc. No. 60). The trial court issued a warrant on March 5, 2018 for T.H.'s arrest as a material witness. (Doc. No. 62).

{¶6} After a jury trial on March 5-6, 2018, Baskin was found guilty of the counts in the indictment. (Doc. Nos. 64, 65, 66, 67); (Mar. 5-6, 2018 Tr., Vol. II, at 364-368). On April 18, 2018, the trial court sentenced Baskin to 10 years in prison on Count One, 24 months in prison on Count Two, 12 months in prison on Count Three, and 12 months in prison on Count Four. (Doc. No. 73). The trial court further ordered Baskin to serve the sentences consecutively for an aggregate term of 14 years in prison. (*Id.*).

{¶7} On April 30, 2018, Baskin filed a notice of appeal and he raises four assignments of error for our review. (Doc. No. 75).

**Assignment of Error No. I**

**The Defendant Made a Request for New Counsel and Discussed Self Representation. The Court's Denial of Both Requests is a Violation of the Defendant's Fundamental Constitutional Rights**

**Under Section 10, Article I of the Ohio Constitution; Sixth and Fourteenth Amendments to the United States Constitution**

{¶8} In his first assignment of error, Baskin argues that the trial court erred by denying his request for substitute trial counsel and his request to represent himself. In particular, Baskin contends that it was error for the trial court to consider the "time and effort[s]" of the jury over his right to counsel or to act as his own counsel.

*Standard of Review*

{¶9} "The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion." *State v. Stein*, 3d Dist. Mercer No. 10-17-13, 2018-Ohio-2345, ¶ 19, citing *State v. Murphy,* 91 Ohio St.3d 516, 523 (2001). Similarly, "[w]e review for an abuse of discretion a trial court's denial of a request to proceed pro se asserted after voir dire was complete." *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 8, citing *State v. Owens*, 9th Dist. Summit No. 25389, 2011-Ohio-2503, ¶ 17, citing *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 51-53. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Substitute-Counsel Analysis*

**{¶10}** "An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant 'has the right to professionally competent, effective representation.'" *Stein* at ¶ 20, quoting *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, ¶ 30 (7th Dist.), citing *Murphy* at 523 (noting that an indigent defendant must show "good cause" to warrant substitution of counsel). "'Competent representation does not include the right to develop and share a "meaningful attorney-client relationship" with one's attorney.'" *Id.*, quoting *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12 (1st Dist.). "In order for the court to discharge a court-appointed attorney, '"the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."'" *Id.*, quoting *State v. Henness*, 79 Ohio St.3d 53, 65 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. "That said, the right to counsel must be balanced against the trial court's authority to control its docket, as well as its awareness that a 'demand for counsel may be utilized as a way to delay the proceedings or trifle with the court.'" *Id.*, quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir.1988), and citing *State v. Lawson*, 8th Dist. Cuyahoga No. 97018, 2012-Ohio-1050, ¶ 24. *See also State v. Jones*, 91 Ohio St.3d 335, 342 (2001) (stating that, among the "[f]actors to consider in deciding whether a trial court erred in denying

a defendant's motion to substitute counsel include 'the timeliness of the motion'"), quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996).

{¶11} Here, Baskin's request for substitute counsel was neither supported by good cause nor made timely. Specifically, during the second day of trial, Baskin made the following outburst in open court after his trial counsel finished cross-examining Detective Steven Stechschulte, Jr. ("Detective Stechschulte") of the Lima Police Department:

[Baskin's Trial Counsel]: No further questions.

[The Trial Court]: Redirect, please.

[Baskin]: Tom Lucente, Jr. I fire you. You're fired.

* * *

[Baskin]: And it's at this time that I ask to be appointed another attorney.

(Mar. 5-6, 2018 Tr., Vol. II, at 214). Outside of the presence of the jury, Baskin further informed the trial court, "I have the right to another attorney, Sir. I don't want this [sic], because he's working with the State." (*Id.* at 215). Baskin also stated that his trial counsel was "not working for" him because he gave "him questions to ask [Detective Stechschulte] and he just refuses them, questions that are pertinent" and because he did "not subpoena[ the witnesses] that [he] asked him to do." (*Id.* at 217-218, 227).

{¶12} Baskin's stated reason for requesting substitute counsel *midway* through trial fails to demonstrate how his attorney-client relationship suffered a breakdown in communication or cooperation of such magnitude that warranted substitution of counsel. *See Coleman*, 37 Ohio St.3d 286, at paragraph four of the syllabus (stating that, in order to demonstrate good cause, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."); *State v. Coleman*, 2d Dist. Montgomery No. 19862, 2004-Ohio-1305, ¶ 31. *See also State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, ¶ 31 (7th Dist.) ("There must be a legitimate reason for the defendant's lack of confidence in the attorney because good cause for dismissal cannot be determined solely according to the subjective standard of what the defendant perceives."), citing *State v. Julious*, 4th Dist. Scioto No. 96CA2409, 1996 WL 718262, *2 (Dec. 5, 1996). Indeed, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure*, 132 Ohio App.3d 227, 239, (7th Dist.1999). *See also Stein* at ¶ 29 ("'Defendant and trial counsel's failure to 'see eye to eye' regarding trial strategy is an insufficient basis for removal of appointed counsel.'"), quoting *State v. Hill*, 8th Dist. Cuyahoga No. 105554, 2018-Ohio-279, ¶ 11, and citing *State v. Crew*, 8th Dist. Cuyahoga No. 86943, 2006-Ohio-4102, ¶ 17 ("Hostility, tension, or personal conflict between an

attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify the withdrawal of appointed counsel.").

{¶13} Moreover, Baskin's substitute-counsel request—made on the second day of trial—was not timely. *Compare Coleman*, 2004-Ohio-1305, at ¶ 32 (concluding that Coleman's "request for new counsel, coming at the start of the second day of his trial, was ill-timed"). *See State v. Spencer*, 10th Dist. Franklin No. 16AP-444, 2017-Ohio-1140, ¶ 9 (concluding that Spencer's substitute-counsel request was not timely because "[i]t occurred the morning of trial"). In other words, it was not error for the trial court to consider the time and efforts of the jury when evaluating Baskin's substitute-counsel request. Thus, the trial court's refusal to substitute Baskin's trial counsel was not unreasonable, arbitrary, or unconscionable under the facts presented.

*Self-Representation Analysis*

{¶14} ""'The Sixth Amendment * * * guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so."'" *Kramer*, 2016-Ohio-2984, at ¶ 5, quoting *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 71, quoting *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975). "'If a trial court denies the right

to self-representation, when properly invoked, the denial is per se reversible error.'" *Id.*, quoting *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 32, citing *State v. Reed*, 74 Ohio St.3d 534 (1996), citing *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944 (1984).

**{¶15}** "'The assertion of the right to self-representation must be clear and unequivocal.'" *Id.* at ¶ 6, quoting *Neyland* at ¶ 72, citing *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 68 and *Cassano* at ¶ 38. A request for self-representation is not unequivocal if the request is a """momentary caprice or the result of thinking out loud,'"" "or the result of frustration." *Neyland* at ¶ 73, quoting *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990), quoting *Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir.1989) and citing *Reese v. Nix*, 942 F.2d 1276, 1281 (8th Cir.1991). "Nor is a request unequivocal if it is 'an "emotional response."'" *Kramer* at ¶ 6, quoting *State v. Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, ¶ 13 (1st Dist.), quoting *Lacy v. Lewis*, 123 F.Supp.2d 533, 548 (C.D.Cal.2000). "'Further, given the disfavored status of the right to self-representation compared to the right to counsel, a defendant who has made an unequivocal assertion of the right to self-representation may later waive it by accepting the assistance of counsel.'" *Id.*, quoting *Steele* at ¶ 13, citing *Cassano* at ¶ 42.

{¶16} "'The defendant must also assert the right in a timely fashion.'" *Id.* at ¶ 7, quoting *Steele* ¶ 14. "'A trial court may deny a defendant's request for self-representation if it is untimely made.'" *Id.*, quoting *Neyland* at ¶ 76, citing *Cassano* at ¶ 40, *United States v. Young*, 287 F.3d 1352, 1354 (11th Cir.2002), *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.2007), and *United States v. Smith*, 413 F.3d 1253, 1281 (10th Cir.2005). "In addition, '[a] request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process.'" *Id.*, quoting *Neyland* at ¶ 72, citing *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.2000).

{¶17} In this case, Baskin's assertion of the right to self-representation was not clear and unequivocal or timely raised. In reviewing the record, it is clear that Baskin's request for self-representation was a momentary caprice, the result of thinking out loud, and the result of frustration. As we addressed above, at the conclusion of Baskin's trial counsel's cross-examination of Detective Stechschulte, Baskin interjected in front of the jury, that he wished to fire his trial counsel. (*See* Mar. 5-6, 2018 Tr., Vol. II, at 214). Because of the extent of Baskin's outburst, the trial court permitted a break for Baskin to collect his thoughts and calm down. When the trial resumed, Baskin, outside of the presence of the jury, informed the trial court that he wished to represent himself. At that point, the trial court began to engage Baskin in a colloquy regarding his self-representation request. However, when

responding to the trial court's direct inquiry (as to self-representation), Baskin repeatedly made inappropriate responses to the trial court's questions. (*See id.* at 235-236).

{¶18} Moreover, the transcript supports that Baskin was venting his frustration that his trial counsel was not asking the questions that Baskin wanted him to ask and that he failed to subpoena the witnesses that Baskin wanted to call. *Compare id.* at ¶ 10 ("We can discern from the transcript that Kramer was venting his frustration when he verbalized his complaint that his counsel was not asking the questions that Kramer wanted to ask."), citing *State v. Jones*, 4th Dist. Athens No. 14CA7, 2014-Ohio-5177, ¶ 18. Indeed, Baskin's "outburst 'was the product of an emotional response to the situation' in which [he] found himself, not a clear and unequivocal self-representation request." *Id.*, quoting *Jones*, 2014-Ohio-5177, at ¶ 18-19 and citing *Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, at ¶ 20 ("The record shows that [the defendant's two pretrial requests to represent himself] were more in the name of impulsive acts expressing frustration with his first counsel than unequivocal requests to represent himself."). Similar to the situation that we addressed in *Kramer*, Baskin's frustration is obvious by virtue of his continuous-courtroom outburst—which began in the presence of the jury and lasted until he was removed from the courtroom (outside of the presence of the jury), despite the trial court admonishing him to cease. *Compare id.* ("This frustration is evidenced by

Kramer's continuing his outburst in front of the jury, even after the trial court judge directed him to cease."), citing *Jones*, 2014-Ohio-5177, at ¶ 18 and *State v. Montgomery*, 5th Dist. Licking No. 2007 CA 95, 2008-Ohio-6077, ¶ 59. Likewise, the trial court was in the best position to observe Baskin's demeanor as he vented his frustration to the court. *See id.*, citing *Jones*, 2014-Ohio-5177, at ¶ 18, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984).

{¶19} Finally, Baskin's self-representation request—made on the second day of trial—was untimely. *See id.* at ¶ 13 ("Finally, we note that Kramer's self-representation request—which was made on the second day of trial—was untimely."), citing *Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, at ¶ 53 (holding "that the trial court did not abuse its discretion and properly refused appellant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented"), *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 32 ("find[ing] that Cassano's request was untimely because it was made only three days before the trial was to start"), *Steele* at ¶ 20 (concluding that "Steele's last-minute request on the day of trial was not timely made"), *Montgomery* at ¶ 59 ("[B]ecause the request was made after the presentation of three witnesses, the self-representation request was untimely."), and *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823, ¶ 37 (concluding that "the inquiry * * * made on the day of trial" was untimely). Put another way, similar to our conclusion regarding Baskin's

substitute-counsel request, it was not error for the trial court to consider the time and efforts of the jury when considering Baskin's self-representation request. Therefore, the trial court did not abuse its discretion by denying Baskin's request to represent himself. *See id.* at ¶ 14.

{¶20} Baskin's first assignment of error is overruled.

## Assignment of Error No. II

**The Action of the Court in Removing the Defendant from the Courtroom for Part of the Testimony of a State Witness, Admission of the State's Exhibits and the Motion for Acquittal Pursuant to Rule 29 of the Rules of Criminal Procedure Violated Defendant's Fundamental Constitutional Right to a Fair Trial and Confrontation of Witnesses Under Section 10, Article I of the Ohio Constitution; Sixth and Fourteenth Amendments to the United States Constitution**

{¶21} In his second assignment of error, Baskin argues that his right to a fair trial was violated when the trial court removed him from the courtroom for a portion of the State's evidence as a result of his outburst. In particular, he contends that the trial court "acted too quickly to remove [him] from his own trial" and "should have used more of a cooling off period or extended recess * * *." (Appellant's Brief at 13).

*Standard of Review*

{¶22} "A trial judge is empowered to maintain decorum and enforce reasonable rules to insure the orderly and judicious disposition of the court's

business." *State v. Dumas*, 7th Dist. Mahoning No. 12 MA 31, 2015-Ohio-2683, ¶ 20, citing *State v. Clifford*, 162 Ohio St. 370, 372 (1954).

> The United States Supreme Court has stated that "[w]e believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."

*Id.*, quoting *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057 (1970). Accordingly, we review a trial court's decision to remove a defendant from the courtroom for an abuse of discretion. *Id.* at ¶ 19, citing *Allen* at 343 and *State v. Chambers*, 10th Dist. Franklin No. 99AP-1308, 2000 WL 963890, *4 (July 13, 2000). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d 151 at 157-158.

*Analysis*

{¶23} "The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a defendant's right to be present in the courtroom at every stage of the trial." *State v. Boynton*, 8th Dist. Cuyahoga No. 106301, 2018-Ohio-4429, ¶ 34, citing *Allen* at 338. *See also State v. Williams*, 6 Ohio St.3d 281, 286 (1983); Ohio Constitution, Article I, Section 10; Crim.R. 43. However, "[a] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and

disrespectful of the court that his trial cannot be carried on with him in the courtroom." *State v. Brown*, 5th Dist. Richland No. 2003-CA-01, 2004-Ohio-3368, ¶ 75, citing *Allen* at 343. In that instance, "trial may proceed in the defendant's absence or by remote contemporaneous video." Crim.R. 43(B). "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with decorum and respect inherent in the concept of courts and judicial proceedings." *Brown* at ¶ 75, citing *Allen* at 343.

{¶24} As an initial matter, because Baskin's trial counsel did not object to Baskin's removal from the courtroom, he waived all but plain error on appeal. *Accord State v. Dixon*, 10th Dist. Franklin No. 17AP-884, 2018-Ohio-3759, ¶ 15 ("We agree with the state that Dixon has waived all but plain error as his counsel did not object when Dixon was removed from the courtroom."); *State v. Porter*, 9th Dist. Summit No. 15511, 1992 WL 308528, *3 (Oct. 21, 1992) (applying plain-error analysis to Porter's courtroom-removal argument because his trial counsel did not object to Porter's removal). "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-

1542, ¶ 68. *See also Dixon* at ¶ 15. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Smith* at ¶ 63, citing *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997).

{¶25} Baskin's argument that the trial court acted "too quickly" by removing him from the courtroom is without merit. *Accord Boynton* at ¶ 36 (concluding that "Boynton's argument that he was removed without warning and an opportunity to return [was] specious"). The record reflects that Baskin continued his disruptive conduct despite the trial court's repeated warnings that he would be removed from the courtroom if he continued to interrupt the proceedings. *See id.* ("Even a cursory review of the record demonstrates that the trial judge repeatedly warned Boynton throughout the proceedings, both before and during trial, that he would be removed from the courtroom if he continued his disruptive behavior."). Indeed, when the trial court was announcing its decision to call the victim as its witness, Baskin interrupted the proceedings by voicing his disagreement with the trial court's decision. After cautioning Baskin about his disruptive conduct, Baskin continued his disruptive, contumacious, and defiant conduct by arguing with the trial judge. Baskin again interrupted the proceedings at the conclusion of his trial counsel's cross-examination of Detective Stechschulte. Baskin's outburst continued for 15

pages of transcript before (contrary to Baskin's argument on appeal) the trial court permitted a break for Baskin to collect his thoughts and calm down.

**{¶26}** When trial resumed, the trial court again warned Baskin (outside of the presence of the jury) to cease his disruptive conduct. Notwithstanding the trial court's admonishment, Baskin continued to conduct himself in a disorderly, disruptive, and disrespectful manner. *Compare Chambers*, 2000 WL 963890, at *4 ("The trial judge used his power to maintain order and decorum in the courtroom. He attempted to warn appellant after the first outburst, outside the presence of the jury. However, appellant chose not to heed such warnings * * *."). Accordingly, the trial court properly exercised its power to maintain order and decorum in the courtroom by removing Baskin to a room in which he could observe the proceedings by remote contemporaneous video. *See id.* (noting that "the trial judge placed appellant in a holding cell that adjoined the courtroom with the door open, thereby allowing appellant to hear the testimony and evidence"); Crim.R. 43. Therefore, the trial court did not deviate from any legal rule here. *See Boynton* at ¶ 36 (concluding that the trial court did not err by removing Boynton from the courtroom because he "chose not to heed the warnings and continued to interrupt the trial court so the proceedings could not continue"); *Chambers* at *4.

**{¶27}** Even if Baskin's removal from the courtroom was in error, the record reflects that Baskin received a fair trial. *See Dixon*, 2018-Ohio-3759, at ¶ 19

(concluding that Dixon's absence from the courtroom did not amount to plain error because he was not deprived of a fair and just hearing). That is, the only portions of trial that Baskin witnessed by remote contemporaneous video were the redirect examination of Detective Stechschulte, the State's admission of its exhibits, and Baskin's Crim.R. 29 motion. During his absence, the trial court permitted Baskin to meet with his trial counsel "as his trial counsel [saw] fit" and the opportunity to adjust his conduct and return to the courtroom. (Mar. 5-6, 2018 Tr., Vol. II, at 241). *See Dixon* at ¶ 19. Eventually, Baskin agreed to cease his disruptive conduct and was then permitted to return to the courtroom.

{¶28} Moreover, the trial court polled each juror as to whether he or she could remain fair and impartial despite Baskin's conduct and absence from the courtroom to which each juror indicated that they could. (*See* Mar. 5-6, 2018 Tr., Vol. II, at 244-247). Likewise, the trial court instructed the jury not to consider Baskin's absence from the courtroom for any purpose. (*See id.* at 248). *Compare Chambers* at *4 (noting "that the trial court gave the jurors two cautionary admonitions telling them to disregard any action on appellant's part, as such was unrelated to the facts of the present case"). *See also Coleman*, 2004-Ohio-1305, at ¶ 32 (noting that the trial court "instructed the jury not to consider Defendant's absence from the trial for any purpose, and it presumed that the jury followed the court's instructions"), citing *State v. Goff*, 82 Ohio St.3d 123, 135 (1998). In sum,

Baskin offers no cogent argument as to how his presence in the courtroom would have changed the outcome of his trial, and we fail to see how it would have. *See Dixon* at ¶ 19. Accordingly, Baskin's second assignment of error is overruled.

**Assignment of Error No. III**

**The Court Errored [sic] When It Allowed Evidence of Other Crimes, Wrongs or Acts of the Defendant Under Rule 404(B) of the Ohio Rules of Evidence in the Case in Chief Against the Defendant in that the Same was Unfairly Prejudicial to the Defendant**

{¶29} In his third assignment of error, Baskin argues that the trial court abused its discretion by admitting evidence under Evid.R. 404(B). In particular, he contends that evidence of a prior domestic-violence conviction involving a different victim and evidence of a prior domestic-violence incident involving T.H. (that did not result in a conviction) was prejudicial and not admissible.

*Standard of Review*

{¶30} "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence, including "other bad acts" evidence.'" *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). However, we apply a plain-error standard of review to this assignment of error because Baskin failed to object at trial to the admission of his prior domestic-violence conviction. *See Bagley*, 2014-Ohio-1787, at ¶ 55 (applying

a plain-error standard of review because Bagley failed to object at the time the "other acts" evidence was admitted); *State v. Hare*, 2d Dist. Clark No. 2017-CA-4, 2018-Ohio-765, ¶ 41 (stating that Hare waived all but plain error on appeal because he "failed to object at the time that this 'other acts' evidence was admitted"). Accordingly, to be reversible, we must conclude that there was error—a deviation from a legal rule—and that the error was an obvious defect in the proceedings that affected the outcome of trial. *See Hare* at ¶ 41, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) and Crim.R. 52(B).

*Analysis*

{¶31} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *Bagley* at ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also Wendel* at ¶ 21. "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No.

2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

**{¶32}** One such exception is when a prior conviction is an element of a charged offense. *See, e.g.*, *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 11. *See also* R.C. 2945.75(B)(1) (providing that "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction"). "Accordingly, even if a defendant's prior convictions are inadmissible under Evid.R. 404(B) and R.C. 2945.59, they may be admissible under R.C. 2945.75, so long as they are not offered 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Myers* at ¶ 12, quoting *State v. Thompson*, 9th Dist. Lorain No. 98CA007112, 2000 WL 235535, *4 (Mar. 1, 2000), and citing *State v. Swiergosz*, 6th Dist. Lucas Nos. L-10-1013 and L-10-1052, 2012-Ohio-30, ¶ 23 and *State v. Rivera*, 99 Ohio App.3d 325, 330-331 (11th Dist.1994) (concluding that there is no conflict between R.C. 2945.75 and Evid.R. 404(B) because the latter acknowledges "that evidence of other crimes may be admitted for purposes other than to prove that the defendant acted in conformity therewith.").

{¶33} Here, evidence of Baskin's prior domestic-violence conviction was properly admitted because it was proof of an element of Count Three. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 118 (concluding that evidence of Spaulding's prior domestic-violence conviction was properly admitted because it "was not just other-acts evidence, it was proof of an element of" the domestic-violence charge for which he stood trial). Indeed, to convict Baskin of domestic-violence as a fourth-degree felony, the State was required to prove that he had a prior domestic-violence conviction. *See id.* ("To convict Spaulding of third-degree-felony domestic violence, the state had to prove that he had two or more prior domestic-violence convictions."); R.C. 2919.25(D)(3). *See also State v. Bibler*, 3d Dist. Marion No. 9-13-70, 2014-Ohio-3375, ¶ 8 ("Because a prior domestic-violence conviction raises the degree of a subsequent offense, a prior conviction is an essential element of the offense."), citing *State v. Allen*, 29 Ohio St.3d 53, 54 (1987). Therefore, the admission of Baskin's prior domestic-violence conviction was not error, let alone plain error.

{¶34} Moreover, Baskin does not direct us to any evidence, and we can find none, that any facts were revealed to the jury surrounding his prior conviction beyond what was necessary under R.C. 2945.75. *See Myers* at ¶ 12 ("'Facts surrounding a prior conviction that are beyond what is necessary pursuant to R.C. 2945.75, however, are admissible only to the extent permitted by Evid.R.

404(B).'"), quoting *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 13, citing *Thompson* at *4. Stated better, and contrary to Baskin's argument on appeal, Baskin's prior domestic-violence conviction was not introduced to prove his character or that he acted in conformity with that character.

{¶35} Nevertheless, Baskin argues that the trial court erred by admitting the evidence of his prior domestic-violence conviction because it involved a different victim. Baskin does not point us to any authority—as he is required to do—that prior domestic-violence convictions involving different victims are inadmissible to enhance a subsequent domestic-violence offense. *See* App.R. 12 and 16. Regardless, even a cursory review of Ohio's domestic-violence statute does not reveal any such limitation. *See* R.C. 2919.25.

{¶36} Baskin also argues that evidence of prior domestic-violence incidents that did not result in criminal charges was inadmissible. Importantly, Baskin failed to identify specifically where in the record the evidence that he contends was inadmissible was introduced. "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "Moreover, '[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *Id.*, quoting *Cook* at ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may

disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7). Because Baskin's argument does not satisfy his obligation to direct us to the parts of the record on which he is relying, we decline to root those out on his behalf. *See State v. Judd*, 8th Dist. Cuyahoga No. 89278, 2007-Ohio-6811, ¶ 46; *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.).

**{¶37}** Baskin's third assignment of error is overruled.

### Assignment of Error No. IV

**The Trial Court Committed Error in Calling the Alleged Victim of the Crime as a Court's Witness Under Evidence Rule 614 for the Sole Purpose of Allowing the State of Ohio to Examine the Said Witness as if on Cross Examination Specifically Where the Only Inquiry Made by the Court for Evidence Purposes Was to Ask the Defendant's Name and then Immediately Turn Over the Witness to the State for Cross Examination**

**{¶38}** In his fourth assignment of error, Baskin argues that the trial court erred by designating T.H. as a court's witness. Specifically, Baskin argues that he was prejudiced when T.H. was called as a court's witness because it allowed the State to present otherwise inadmissible evidence to the jury. That is, Baskin contends that the State impermissibly used impeachment as a "subterfuge" to present inadmissible hearsay evidence to the jury.

*Standard of Review*

**{¶39}** Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, citing *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18; *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 18 (2d Dist.). "The prime candidate is a victim and an eyewitness who will not otherwise cooperate with the party originally planning to call him." *Renner* at ¶ 23, citing *Curry* at ¶ 18.

**{¶40}** "The decision as to whether to call a witness on its own motion pursuant to Evid.R. 614(A) is within the discretion of the trial court and will be

reversed only for an abuse of such discretion." *State v. Marshall*, 9th Dist. Lorain No. 01 CA007773, 2001 WL 1647706, *2 (Dec. 26, 2001). *See also Renner* at ¶ 24. For us to conclude that the trial court abused its discretion, we must conclude that its decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158.

*Analysis*

**{¶41}** As an initial matter, Evid.R. 614(C) requires that objections to the trial court's calling of a witness be made either at the time of the calling or shortly thereafter. In this case, the trial court asked Baskin's trial counsel if he had "any input on [the] subject" of declaring T.H. a court's witness. (Mar. 5-6, 2018 Tr., Vol. I, at 30). Baskin's trial counsel responded, "Yeah, Your Honor, only to say that she's the victim here and if she doesn't want to move forward I don't know who the State is to force her to do so, Your Honor." (*Id.*). Even if we interpret this statement as an objection, we conclude that the trial court did not abuse its discretion in declaring T.H. its witness.

**{¶42}** In this case, after the parties presented their opening statements to the jury, the State, outside the presence of the jury, requested that the trial court call T.H. as its witness under Evid.R. 614(A). The State argued that it anticipated T.H.'s testimony would be inconsistent with her pre-trial statements. In support of its argument, the State represented to the trial court that, prior to trial, it received a

phone call from a woman identifying herself as T.H. who stated that she would not appear at Baskin's trial. (Doc. No. 60). The State further represented that T.H. was heard to say to Baskin that, during a jailhouse phone call from Baskin, she did not intend to testify or cooperate with the State at trial. (*See id.*). Accordingly, we conclude that the trial court did not abuse its discretion by calling T.H. as its witness. *See Renner*, 2013-Ohio-5463, at ¶ 26 (concluding that the trial court did not abuse its discretion by calling the victim as its witness because she "maintained a supportive relationship with her husband (the defendant), she expressed that she did not want the State to pursue charges against Renner, and she was uncooperative with the State once charges were filed").

{¶43} Nevertheless, Baskin contends that it was error for the State to use "its ability to cross examine and impeach [T.H.] as a substitute for introducing otherwise inadmissible evidence * * *." (Appellant's Brief at 21). Here, Baskin makes two arguments. First, he argues that the State's cross-examination of T.H. (which continued for nearly 30 pages of trial transcript) encompassed many details of the charges for which Baskin stood trial. That is, he argues that the State's cross-examination of T.H. implied that the content of T.H.'s prior statements—that Baskin broke into her house; jumped out of her closet and punched her in the face; and prevented her from leaving or contacting law enforcement—were true. *Compare State v. Johnson*, 2d Dist. Montgomery No. 26055, 2015-Ohio-5491, ¶ 66. Second,

Baskin contends that the trial court failed to instruct the jury that it could not consider T.H.'s pre-trial statements (to law enforcement and the State) as substantive evidence because such statements constituted inadmissible hearsay.

**{¶44}** We begin our analysis by addressing the State's cross-examination of T.H. "As a general rule, cross-examination is permitted 'on all relevant matters and matters affecting credibility.'" *State v. West*, 5th Dist. No. 16 CA 11, 2017-Ohio-4055, ¶ 91, quoting Evid.R. 611(B). "The scope of cross-examination lies within the sound discretion of the trial court" and "will not be reversed in the absence of * * * an abuse of discretion." *Id.*, citing *State v. Slagle*, 65 Ohio St.3d 597, 605 (1992). As we previously stated, for this court to conclude that a trial court abused its discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158. However, because Baskin failed to object to the manner and extent of the State's cross-examination of T.H., he has waived all but plain error on appeal. *See State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 20 (noting that "[t]he failure to object to trial testimony forfeits all but plain error"), citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23. Accordingly, we are restricted to only recognize errors to prevent a manifest miscarriage of justice. *See Rogers* at ¶ 22.

**{¶45}** In this case, the State's cross-examination of T.H. did not amount to plain error. Typically, the rules of evidence prohibit a party from attacking the

credibility of its own witness. *See, e.g.*, Evid.R. 607. However, "[b]y authorizing the court to call a witness who may then be cross-examined by any party, Evid.R. 614 creates an exception to the limitation imposed by Evid.R. 607(A), barring a party's impeachment of its own witness with evidence of a prior inconsistent statement." *Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, at ¶ 45.

{¶46} Baskin does not dispute that T.H.'s prior inconsistent statements were admissible for the purpose of impeaching her. Instead, he objects to the manner and the extent of the State's cross-examination of T.H., claiming that such examination amounted to the presentation of substantive evidence. Specifically, Baskin argues that the State's cross-examination of T.H. about her prior statements did more than attempt to impeach her credibility; it presented the complete version of events that T.H. previously recounted. *Compare Johnson*, 2015-Ohio-5491, at ¶ 69 ("However, the extent and detail with which the State questioned [the witness] about his prior statements did more than attempt to refresh [the witness's] recollection and impeach his credibility; it presented, through the State's questioning, the complete version of events previously testified to or recounted by [the witness].").

{¶47} "Where impeachment is used as a 'subterfuge' to get evidence before the jury which is not otherwise admissible, it is improper." *Id.* at ¶ 69, citing *Arnold* at ¶ 45, quoting Annotation, *Calling and Interrogation of Witnesses by Court under Rule 614 of the Federal Rules of Evidence*, 53 A.L.R.Fed. 498, 500-501 (1981) and

citing *State v. Slaughter*, 2d Dist. Montgomery No. 25215, 2014-Ohio-862, ¶ 51. However, even though some of the State's questions implicated Baskin or corroborated T.H.'s prior version of events, the State's cross-examination of T.H. did *not* amount to a subterfuge to get substantive evidence before the jury. *See State v. Brown*, 11th Dist. Lake No. 2014-L-032, 2015-Ohio-950, ¶ 22 ("Nevertheless, the fact that a witness may be impeached as a court's witness in an otherwise inadmissible fashion does not, by necessity, indicate subterfuge."), citing *Arnold* at ¶ 45 ("When the reason a party relies on for requesting the court to call a witness as a court's witness, rather than calling him as a witness itself, is to avoid being unable to test the credibility of the testimony the witness is expected to give by use of his prior out-of-court statements, the request is not improper."). *Contra Johnson* at ¶ 69 (concluding that the State's questioning of the witness amounted to a subterfuge to get evidence before the jury that was not otherwise admissible because "[m]any of the State's questions directly implicated Johnson [or] corroborated the version of events suggested in the 'impeachment' questioning of" another witness). Rather, in accordance with the rules of evidence, the State was attempting to lay a proper foundation to introduce extrinsic evidence of T.H.'s prior inconsistent statements. *See Arnold* at ¶ 48; *Brown* at ¶ 23. *See also* Evid.R. 613. Accordingly, the resolution of Baskin's argument concerning the State's cross-examination of T.H. necessitates a review of her pre-trial statements that were admitted into evidence.

{¶48} As with the scope of the examination of witnesses, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). *See also State v. Shook*, 3d Dist. Logan No. 8-14-01, 2014-Ohio-3987, ¶ 49 (applying the abuse-of-discretion standard of review a trial court's admission of extrinsic evidence under Evid.R. 613(B)), citing *State v. Graham*, 58 Ohio St.2d 350, 352 (1979). To constitute an abuse of discretion, the trial court must have acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157-158. However, when a party "wishing to exclude evidence fails to contemporaneously object at trial when the evidence is presented, that party waives for appeal all but plain error." *Bagley*, 2014-Ohio-1787, at ¶ 53-54, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59-60, *State v. Barrett*, 4th Dist. Scioto No. 03CA2889, 2004-Ohio-2064, ¶ 20, and *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 19. To find plain error, we must conclude that the trial court erred by admitting the evidence and the record must clearly reflect that the defendant would not have been convicted but for the admission of the improper evidence. *Id.*, citing *Williams*, 79 Ohio St.3d at 12.

{¶49} As an initial matter, we must address whether Baskin properly preserved this issue on appeal. In this case, Baskin did not object to the admission

of T.H.'s prior inconsistent statements—namely, testimonial or extrinsic evidence of what she reported: (1) in her phone call to the Lima Police Department; (2) to Officer Blake Van Vorce ("Officer Van Vorce") of the Lima Police Department; (3) during an interview with Detective Stechschulte; or (4) during a trial-preparation interview with Detective Stechschulte and the State—on the *basis* that it was inadmissible impeachment evidence. Although Baskin lodged an objection to the admission of the recording of T.H.'s phone call to the Lima Police Department, Baskin's objection was on a different basis—namely, Baskin's stated reason for the objection was that he "didn't receive it 'til today." (Mar. 5-6, 2018 Tr., Vol. I, at 149).[1] """Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and" "[i]n case the ruling is one admitting evidence, a timely objection appears in the record stating the specific ground of the objection, if the specific ground was not apparent from the context.""" *State v. Bentz*, 3d Dist. Allen No. 1-16-17, 2017-Ohio-5483, ¶ 127, quoting *Stark v. Stark*, 5th Dist. Delaware No. 01CAF6020, 2002 WL 109281, *3 (Jan. 4, 2002), quoting Evid.R. 103(A)(1). Notwithstanding the prescription of Evid.R. 103(A)(1) requiring a timely objection stating the *specific* ground of the objection, even if we assume without deciding that an abuse-of-discretion standard applies to T.H.'s phone call to the Lima Police Department, the result is still the

---

[1] Baskin did not contemporaneously object to either time that the State played the T.H.'s phone call to the Lima Police Department for the jury. (Mar. 5-6, 2018 Tr., Vol. I, at 61, 127).

same. *See Wendel*, 2016-Ohio-7915, at ¶ 10 ("We will assume without deciding that an abuse-of-discretion standard of review applies as to Rebecca's testimony, even though Wendel objected to only one of the statements."); *Stark* at *3 ("Although appellant did not specifically state hearsay as the reason for the objection, the court did not abuse its discretion in admitting the evidence.").

**{¶50}** Moreover, because Baskin did not object on any *basis* to the admission of testimonial or extrinsic evidence of what T.H.: (1) told Officer Van Vorce; (2) said during an interview with Detective Stechschulte; or (3) said during a trial-preparation interview with Detective Stechschulte and the State, Baskin waived all but plain error on appeal as to the admission of that evidence as impeachment evidence.

**{¶51}** Under Evid.R. 613, extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

> (1)   If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2)   The subject matter of the statement is one of the following:
>
> (a)   A fact that is of consequence to the determination of the action other than the credibility of a witness;
>
> (b)   A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c)   A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B).

"'When extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement.'"

*Johnson*, 2015-Ohio-5491, at ¶ 68, quoting *State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 27, citing *State v. Mack*, 73 Ohio St.3d 502, 514-515 (1995).  *See also Shook*, 2014-Ohio-3987, at ¶ 51.  "If a witness denies making the statement, extrinsic evidence of the statement is generally admissible; provided, the evidence does not relate to a collateral matter."  *Shook* at ¶ 52, citing *State v. Soke*, 105 Ohio App.3d 226, 239 (8th Dist.1995), citing *State v. Riggins*, 35 Ohio App.3d 1, 3 (8th Dist.1986).

{¶52} T.H. was an uncooperative and difficult witness.  Initially, T.H. testified that she recalled reporting to Officer Van Vorce and Detective Stechschulte that Baskin hit her.  However, shortly thereafter, T.H. became argumentative and unresponsive to the State's questions, which resulted in the need for the trial court to excuse the jury and to instruct T.H. to properly answer the State's questions. When the jury returned and the State resumed its cross-examination of T.H., she

denied, contradicted, or could not recall the content of her prior statements to law enforcement or the State. Thus, based on T.H.'s inconsistent testimony, the State was permitted to impeach T.H.'s testimony—namely T.H.'s denials that Baskin committed the crimes of aggravated burglary, abduction, and domestic violence.[2]

{¶53} Accordingly, because the State sought to impeach T.H.'s denials that Baskin committed aggravated burglary, abduction, and domestic violence, the State had to confront T.H. with the *content* of her prior statements in order to lay the proper foundation for the admission of extrinsic evidence of her prior inconsistent statements. *See State v. Sullens*, 10th Dist. Franklin No. 15AP-1159, 2017-Ohio-4081, ¶ 18. Stated differently, the State was not attempting to impeach T.H. for asserting that she did not contact law enforcement or that she did not make a statement to law enforcement or the State—it was attempting to impeach the *content* (facts that were of consequence to the determination of the action) of her prior statements to law enforcement and the State.[3] *Compare id.* (stating that, because "the State was not attempting to impeach Z.S. for asserting that she had not made a statement to police," "that denial was irrelevant, because impeachment evidence

---

[2] Baskin does not dispute that he violated the protection order.
[3] Although an argument exists that a portion of the State's cross-examination of T.H. was an attempt to lay a foundation to refresh T.H.'s recollection as to whether she called the Lima Police Department because she testified, in part, that she could not recall whether she placed the call, we need not address whether the admission of that audio recording into evidence was proper under Evid.R. 803(5) because we conclude that it was admissible for another reason.

must contradict a statement regarding a 'fact that [was] of consequence to the determination of the action.'"), quoting Evid.R. 613(B)(2)(a).

**{¶54}** Moreover, in addition to T.H. having the opportunity to explain or deny her prior statements, Baskin was afforded the opportunity to interrogate T.H. about her statements. For these reasons, we conclude that the State laid the proper foundation for the admission of extrinsic evidence of T.H.'s prior inconsistent statements—namely, evidence of what she reported: (1) in her phone call to the Lima Police Department; (2) to Officer Van Vorce; (3) during an interview with Detective Stechschulte; and (4) during a trial-preparation interview with Detective Stechschulte and the State—as impeachment evidence. *See State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, ¶ 31 (2d Dist.) (concluding that a proper foundation was laid for the introduction of extrinsic evidence of prior inconsistent statements under Evid.R. 613(B) because the witness "repeatedly testified that she did not remember her responses to many of [the] questions"); *State v. Allen*, 5th Dist. Stark No. 2012CA00196, 2013-Ohio-3715, ¶ 12 (concluding that the elements of Evid.R. 613(B) were satisfied because an issue existed as to the witness's credibility and the witness was afforded the opportunity to explain or deny her statements and defense counsel was afforded the opportunity to interrogate the witness on her statements). Therefore, because we conclude that the State laid the proper foundation for the admission of the extrinsic evidence of T.H.'s prior inconsistent statements, the

manner and the extent of the State's cross-examination of T.H. did not amount to plain error under the specific facts and circumstances of this case. Likewise, it was not error—let alone discretionary error or plain error—to admit the extrinsic evidence of T.H.'s prior inconsistent statements under Evid.R. 613.

{¶55} Nevertheless, Baskin contends that the unbridled admission of T.H.'s prior inconsistent statements amounted to error and that the trial court erred by failing to instruct the jury that it could consider T.H.'s pre-trial statements for only impeachment purposes and not as substantive evidence to establish the truth of those facts. Statements admitted under Evid.R. 613(B) require a trial court to inform the jury that it may consider the evidence of the prior statements solely for the purpose of impeaching a witness's credibility, not as substantive evidence of a defendant's guilt. *State v. Dyer*, 11th Dist. Lake No. 2015-L-121, 2017-Ohio-426, ¶ 57, citing *State v. Armstrong*, 11th Dist. Trumbull Nos. 2001-T-0120 and 2002-T-0071, 2004-Ohio-5635, , ¶ 109, and citing *State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060, ¶ 17 and Evid.R. 105 ("[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly").

{¶56} "Ordinarily, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an

abuse of discretion." *State v. Teitelbaum*, 10th Dist. Franklin No. 14AP-310, 2016-Ohio-3524, ¶ 127, citing *Clark v. Grant Med. Ctr.*, 10th Dist. Franklin No. 14AP-833, 2015-Ohio-4958, ¶ 50. However, because Baskin did not request a limiting instruction or otherwise object to the jury instructions given, we are limited to reviewing whether the trial court committed plain error by not providing any such limiting instruction. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 128; *Dyer* at ¶ 58. Thus, similar to our other plain-error review, we are limited to noticing errors that affect substantial rights. *Dyer* at ¶ 59, citing Evid.R. 103(A)(1), (D).

**{¶57}** To determine whether the trial court's failure to instruct the jury that it could only consider T.H.'s prior statements as impeachment evidence constituted plain error, we must determine whether the jury could consider that evidence as substantive evidence.

> "[T]he use of prior inconsistent statements is limited. '[W]hen a prior inconsistent statement is offered for the purpose of impeachment, the trier of fact may only consider the prior statement as substantive evidence if the prior statement is not inadmissible as hearsay.'"

*Johnson*, 2015-Ohio-5491, at ¶ 77, quoting *State v. Heard*, 1st Dist. Hamilton No. C-130789, 2014-Ohio-4643, ¶ 11, quoting *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, ¶ 40, citing Evid.R. 801, 802, 803, and 804, and *Dayton v. Combs*, 94 Ohio App.3d 291 (2d Dist.1993) ("If the statement is used to establish the truth of the matter asserted, i.e., as substantive evidence, with or

without an additional purpose to impeach, the hearsay rule and its exceptions are implicated."). *See also McKelton* at ¶ 128 (stating that "unless another hearsay exception applies, a party may not interrogate his own witness about a prior inconsistent statement '"for the purpose of offering substantive evidence against the accused"'"), quoting *State v. Dick*, 27 Ohio St.2d 162, 165 (1971), quoting *State v. Duffy*, 134 Ohio St. 16 (1938), paragraph two of the syllabus.  Here, Baskin argues that T.H.'s pre-trial statements could not be used as substantive evidence because those statements constituted impermissible hearsay evidence.

{¶58} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).  Hearsay is generally not admissible unless an exception applies.  Evid.R. 802.  "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Combs* at 300.

{¶59} Before addressing whether T.H.'s pre-trial statements could be considered as substantive evidence, we must first address whether Baskin appropriately objected to the admission of her pre-trial statements.  In this case, in addition to failing to object to the admission of any of the evidence of T.H.'s prior inconsistent statements on the *basis* that it was impermissible impeachment evidence, Baskin did not object to the admission of that evidence on the *basis* that

it was inadmissible hearsay evidence. However, as we previously addressed, even if we assume without deciding that an abuse-of-discretion standard applies to the admission of T.H.'s call to the Lima Police Department because he lodged *an* objection to the admission of that evidence on a different basis, the result is still the same.

{¶60} In addition to being admissible as impeachment evidence, T.H.'s call to the Lima Police Department was admissible as substantive evidence under Evid.R. 803. *See State v. Mosley*, 4th Dist. Scioto No. 00CA2739, 2001 WL 888376, *6 (July 18, 2001) (concluding that hearsay statements admissible as excited utterances were admissible as substantive evidence). In particular, "Evid.R. 803(2) excludes an excited utterance from the hearsay rule. An excited utterance is '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *State v. Thompson-Shabazz*, 2d Dist. Montgomery No. 27155, 2017-Ohio-7434, ¶ 105, quoting Evid.R. 803(2).

{¶61} The Supreme Court of Ohio has set forth the following test for determining whether a statement qualifies as an excited utterance under Evid.R. 803(2):

> (a)   that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and

beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

*State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 166. "When evaluating statements under this test, '[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance.'" *State v. Little*, 3d Dist. Allen No. 1-16-29, 2016-Ohio-8398, ¶ 11, quoting *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). "Rather, 'each case must be decided on its own circumstances.'" *Id.*, quoting *State v. Duncan*, 53 Ohio St.2d 215, 219 (1978). "'The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.'" *Id.*, quoting *Taylor* at 303.

{¶62} T.H.'s call to the Lima Police Department satisfies the four elements of an excited utterance. *See Thompson-Shabazz* at ¶ 112 (concluding that the victim's call to 333-COPS constituted an excited utterance). Indeed, T.H. endured

a startling occurrence during which she sustained injuries to her head and leg and was required to lure Baskin away from her home in order to escape from him. *See State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 26 (noting that the victim's "statements related to the domestic violence event, and as the victim of the domestic violence, she had personally observed the violent attack"). Further, after escaping from Baskin, T.H. returned to her residence to contact law enforcement for assistance. *See Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, at ¶ 168-169 (addressing the timing of excited utterances). Moreover, after reviewing the audio recording of the phone call, it is evident that T.H.'s statements were the product of reactive, not reflective, thinking. *Compare State v. Holloway*, 10th Dist. Franklin No. 02AP-984, 2003-Ohio-3298, ¶ 51 (concluding that the evidence in the record reflected "that the altercation in the home was a startling occurrence that produced nervous excitement sufficient to render the victim's statements spontaneous and unreflective"). Therefore, T.H.'s phone call to the Lima Police Department was admissible as an excited utterance and the trial court did not abuse its discretion by admitting it into evidence for the jury's consideration as substantive evidence.

{¶63} Turning to the other evidence that Baskin contends was inadmissible hearsay, because Baskin failed to object to the admission of any of that evidence on *any* basis, he waived all but plain error on appeal. (*See* Mar. 5-6, 2018 Tr., Vol. I,

at 73-75, 132-140); (Mar. 5-6, 2018 Tr., Vol. II, at 263). We agree (with Baskin) that the trial court erred by admitting: (1) Officer Van Vorce's recitation of the version of events that T.H. relayed to him; (2) Detective Stechschulte's recitation of the version of events that T.H. relayed to him; (3) State's Exhibit 25—a video recording of T.H.'s interview with Detective Stechschulte; and (4) State's Exhibit 26—an audio recording of T.H.'s pre-trial interview with Detective Stechschulte and the State. That is, such evidence constitutes hearsay and does not fall within any of the exceptions set forth under Evid.R. 803.

{¶64} However, having found error in the admission of Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26, we must determine whether the admission of that evidence constituted harmless error. *See Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, at ¶ 176. *See also Johnson*, 2015-Ohio-5491, ¶ 86. Ohio's criminal-harmless-error rule, Crim.R. 52(A), provides: "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "In most cases, in order to be viewed as 'affecting substantial rights,' '"the error must have been *prejudicial*."'" (Emphasis sic.) *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 36, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 7. "Accordingly, Crim.R. 52(A) asks whether the rights affected are 'substantial' and, if so, whether a defendant has suffered any prejudice as a result." *Id.* "'Any error in the admission of hearsay is generally harmless when

the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature.'" *Wendel*, 2016-Ohio-7915, at ¶ 12, quoting *State v. Geboy*, 145 Ohio App.3d 706, 721 (3d Dist.2001), and citing *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 72.

**{¶65}** We conclude that the admission of Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26 constitute harmless error. There is no dispute that the declarant, T.H., was cross-examined at length about her pre-trial statements. *See Wendel* at ¶ 13. Likewise, that evidence is cumulative of other evidence presented at trial. Specifically, Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26 are merely cumulative to the content of T.H.'s phone call to the Lima Police Department, which we determined was admissible as substantive evidence. In other words, Baskin was not prejudiced by the admission of that evidence. Accordingly, because the admission of Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26 constitute harmless error, the admission of that evidence did not amount to plain error. *See id.* (concluding that the erroneous admission of hearsay evidence was not plain error because the admission of that evidence was harmless since the declarant was cross-examined on the statements and the statements were cumulative in nature).

{¶66} Finally, for similar reasons, the trial court's failure to instruct the jury that it could only consider T.H.'s pre-trial statements as impeachment evidence does not constitute plain error. First, because we determined that T.H.'s phone call to the Lima Police Department was admissible as substantive evidence, it was unnecessary for the trial court to limit the jury's consideration of that evidence. Further, even if the jury improperly considered Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26 as substantive evidence, that error was not outcome determinative since the evidence contained in T.H.'s phone call to the Lima Police Department contains enough evidence to support the jury's determination of guilt in this case. *See McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, at ¶ 130; *Dyer*, 2017-Ohio-426, at ¶ 58. That is, Baskin was not prejudiced by the trial court's failure to give a limiting instruction with respect to Officer Van Vorce's testimony, Detective Stechschulte's testimony, and State's Exhibits 25 and 26 because any such limiting instruction would have been inconsequential. *See Dyer* at ¶ 58.

{¶67} For these reasons, Baskin's fourth assignment of error is overruled.

{¶68} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**