[Cite as *State v. Dixon*, 2018-Ohio-3759.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

     Plaintiff-Appellee,                          :

                                    No. 17AP-884

v.                                                           :      (C.P.C. No. 17CR-3115)

Kevin D. Dixon,                                       :      (REGULAR CALENDAR)

     Defendant-Appellant.                       :

---

D E C I S I O N

Rendered on September 18, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Yeura Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued:** *Ian J. Jones*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Kevin D. Dixon, appeals from the December 14, 2017 judgment of the Franklin County Court of Common Pleas imposing consecutive sentences. For the following reasons, we affirm.

{¶ 2} On June 7, 2017, a Franklin County Grand Jury indicted Dixon on kidnapping, a felony of the first degree in violation of R.C. 2905.01; abduction, a felony of the third degree in violation of R.C. 2905.02, and domestic violence, a felony of the third degree in violation of R.C. 2919.25. Dixon initially entered a not guilty plea. On October 24, 2017, he withdrew his not guilty plea and entered a guilty plea to the stipulated lesser-

included offense of kidnapping, a second-degree felony, and domestic violence. The trial court accepted his guilty plea, found him guilty, entered a nolle prosequi on the abduction count, and delayed sentencing for the preparation of a presentence investigation report.

{¶ 3} At the sentencing hearing, the trial court remarked a couple of times on Dixon's conduct during the proceeding. Then, as the trial court was preparing to announce the prison sentence, the court stopped and instructed Dixon to stop looking at the victim. When he attempted to justify his behavior, the trial court found that Dixon was an "obstreperous defendant" and ordered his removal from the courtroom. The trial court proceeded with the sentencing hearing in Dixon's absence and imposed an 8-year prison term for kidnapping and a 36-month prison term for domestic violence. The sentences were ordered to be served consecutively for a total of 11 years.

{¶ 4} Dixon appealed, asserting the following assignments of error:

> [I.] The trial court erred when it imposed consecutive sentences upon the defendant without making the required findings required by R.C. 2929.14(C)(4) and mandated by the Ohio Supreme Court in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, and further erred when it imposed consecutive sentences that were disproportionate to the seriousness of the offender's conduct.

> [II.] The trial court erred when it ordered the defendant to be removed from the courtroom during his sentencing and by sentencing the defendant in absentia when the defendant had not engaged in any disruptive conduct and had not been first warned that he could be removed for disruptive conduct.

**First Assignment of Error - Consecutive Sentences**

{¶ 5} In his first assignment of error, Dixon challenges the imposition of consecutive sentences. He argues that the trial court failed to address the proportionality of consecutive sentences to the seriousness of his conduct and that, even if the trial court made the proper finding, it was not supported by the record. In this assignment of error, Dixon also appears to raise arguments regarding imposing the maximum sentence for each count, disproportionate sentence to those similarly situated, and allied offenses. Because Dixon's assignment of error does not include these arguments, we need not address them. *See Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9 ("[W]e will address each assignment of error as written and disregard any superfluous arguments not raised by the actual assignment of error under review.").

{¶ 6}    In order to impose consecutive terms of imprisonment, R.C. 2929.14(C)(4) requires that the trial court make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one or more of the following subsections applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 7}    A trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and must include those findings in its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 8}    In this case, all of the required statutory findings were incorporated in the trial court's sentencing journal entry. At the sentencing hearing, the trial court made the following findings in support of consecutive sentences:

> Pursuant to Revised Code Section 2929.14 Subsection (C)(4), because these offenses clearly constitute an ongoing course of conduct and because the court believes that no single sentence can satisfy the course of conduct, the danger that conduct poses to the community, and in order to ensure the safety of the community, because, again, Mr. Dixon has demonstrated a

> clear pattern of repeated behavior, he is assaultive to the mothers of his children, those sentences are going to run consecutively with each other for a total of 11 years of incarceration with the Department of Rehabilitation and Correction, with 174 days of jail-time credit.

(Tr. at 43.)

{¶ 9} Although the trial court used some of the statutory terminology in making its findings, it did not use the exact language of the statute. A talismanic incantation of the words of the statute is not necessary, however, as long as an appellate court is able to discern that the trial court engaged in the correct analysis. *Bonnell* at ¶ 37. It is clear from the sentencing hearing transcript that the trial court believed that consecutive sentences were necessary to protect the public from future crime and to punish Dixon. The question in this case is whether the trial court engaged in the proportionality analysis required by R.C. 2929.14(C)(4).

{¶ 10} The disproportionality finding of R.C. 2929.14(C)(4) requires that the trial court find that consecutive sentences are not disproportionate to (1) the seriousness of the offender's conduct *and* (2) to the danger the offender poses to the public. *State v. Hairston*, 10th Dist. No. 17AP-416, 2017-Ohio-8719, ¶ 13. Instead of referencing proportionality, the trial court found that "no single sentence can satisfy that course of conduct, the danger that conduct poses to the community." (Tr. at 42.) This language is more akin to the finding in R.C. 2929.14(C)(4)(b) which states:

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

Courts have held that even though the trial court employed the language of R.C. 2929.14(C)(4)(b), rather than the specific language of R.C. 2929.14(C)(4), the statement equated to a proportionality/danger to the public finding. *State v. White*, 7th Dist. No. 16 MA 0143, 2017-Ohio-7797, ¶ 14; *State v. Fields*, 10th Dist. No. 16AP-417, 2017-Ohio-661. Based upon this court's decision in *Fields*, by stating "no single sentence can satisfy that course of conduct," the trial court weighed the severity of consecutive sentences against the

seriousness of the conduct. This language demonstrates that the trial court engaged in a proportionality analysis even though it did not use the statutory language. *Id.* at ¶ 20.

{¶ 11} Dixon also argues that the record does not support a finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. He seems to contend that in the absence of his prior convictions the maximum sentence he could have received for domestic violence was six months. However, because Dixon did have prior convictions, the domestic violence offense was elevated to a felony of the third degree, the maximum sentence for which is 36 months. Dixon further claims that any additional sentence for kidnapping was not warranted and asks this court to modify his sentence to three years. We disagree.

{¶ 12} In imposing consecutive sentences, the trial court stated that Dixon demonstrated a clear pattern of repeated behavior in that he has been assaultive to the mothers of his children. The trial court also made several findings that showed that Dixon's conduct was more serious than conduct that normally constitutes the offense. Dixon assaulted the victim when she came to pick up their children and then pursued her when she was able to get away from him. He rear-ended her vehicle and forced her to pull over. Dixon proceeded to beat her a second time. All of this was done in the presence of their three young sons. While Dixon attempts to minimize the physical harm the victim suffered, the victim stated that she lives in fear of him and that she has had to take her sons to counseling. Based on these facts, we cannot clearly and convincingly find that the record does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of appellant's conduct and the harm that he caused.

{¶ 13} The first assignment of error is overruled.

**Second Assignment of Error – Sentencing in Absentia**

{¶ 14} In his second assignment of error, Dixon argues that he had an absolute right to be present for all of his sentencing unless he engaged in disruptive behavior and was warned that continued disruptive behavior would result in removal. He denies that he engaged in any disruptive behavior. Even if he did, Dixon contends that the trial court failed to provide any warning that he could be removed from the courtroom. In response, the state contends that the trial court acted within its discretion by removing Dixon from the courtroom, and that because no objection was raised Dixon would have to prove plain

error.  The state argues that Dixon cannot show either an abuse of discretion or prejudice resulting from the continuation of the sentencing hearing without Dixon being present.

{¶ 15} We agree with the state that Dixon has waived all but plain error as his counsel did not object when Dixon was removed from the courtroom.  Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Plain error, however, does not exist unless it can be said that, but for the error, the outcome of the proceeding clearly would have been otherwise.  *State v. Long*, 53 Ohio St.2d 91, 92 (1978).  Notice of plain error should be taken only in exceptional circumstances and with extreme caution to avoid a manifest injustice.  *Id.* at 94-95.

{¶ 16} It is axiomatic that a criminal defendant has a fundamental right to be present at all critical stages of his criminal trial.  Section 10, Article I, Ohio Constitution; *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 100.  Crim.R. 43(A)(1) provides that "the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence."  This right, however, is not absolute.  A defendant's presence can be waived or extraordinary circumstances may exist that require the defendant's exclusion, such as a defendant's misconduct.  *State v. Chambers*, 10th Dist. No. 99AP-1308 (July 13, 2000), citing *State v. Williams*, 6 Ohio St.3d 281, 286 (1983).  A defendant can lose the right to be present during a criminal proceeding if, after a warning by the trial court that continued disruptive behavior will result in removal, the defendant persists with conduct that is so disorderly, disruptive, and disrespectful of the trial court that the proceeding cannot continue with the defendant in the courtroom.  *Illinois v. Allen*, 397 U.S. 337, 343 (1970).  "Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video, and judgment and sentence may be pronounced as if the defendant were present."  Crim.R. 43(B).

{¶ 17} Dixon denies that he engaged in any disruptive conduct.  He also faults the trial court for failing to warn him that he could be removed from the courtroom even if he had engaged in any disruptive behavior.  A review of the record indicates that Dixon did

interrupt the trial court.  During defense counsel's statement in mitigation, Dixon's conduct caused the trial court to inquire "Mr. Dixon, what is the problem?"  (Tr. at 18.)  The trial court also noted that Dixon interrupted the court with gestures and attempts to talk.  *Id.* at 27.  The final exchange between the trial court and Dixon occurred just after the trial court announced that prison was the appropriate sanction.

> THE COURT:  So first the first thing I am going to say is I am going to find that you are not amenable to a community control sanction, that prison is the most appropriate sanction, that that sanction is consistent -- don't look back at her anymore.  Don't do it.
>
> THE DEFENDANT:  Sorry, Your Honor.  It has just been a minute since I seen her.
>
> THE COURT:  Don't do it.  Because I interpret that as an attempt to intimidate her.
>
> THE DEFENDANT:  Your Honor, I am not trying to --
>
> THE COURT:  I want you to be quiet.  That is not acceptable.
>
> THE DEFENDANT:  Sorry, ma'am.  She is the mother of my kids.  She is also --
>
> THE COURT: I know exactly who she is.
>
> THE DEFENDANT:  We went through eight years.
>
> THE COURT:  I am going to find that Mr. Dixon is an obstreperous defendant.  The court is going to proceed with sentencing without him being present. Deputies, take him back to the holding cell, please.
>
> Let the record reflect that Mr. Dixon is slamming doors and hitting things as he is being removed from the courtroom.  The court doesn't have to entertain that.  The case law doesn't suggest that I have to continue to allow him to be present if his behavior is going to be obstreperous, which is why I had him removed.  I will impose the sentence without him being present.

*Id.* at 41-42.

{¶ 18} A transcript does not necessarily capture everything that happens in the courtroom. Here, for example, we cannot determine from the transcript the nature of Dixon's gestures or whether his looks toward the victim were menacing or aggressive. The absence of an objection to Dixon's removal also suggests that his counsel may have been concerned about Dixon's conduct.

{¶ 19} Even if we were to agree that the trial court erred by removing Dixon from the courtroom during the sentencing hearing without first warning him, not all errors of constitutional dimension are prejudicial. *Williams* at 286. With regard to a defendant's right to be present, prejudicial error exists only where " 'a fair and just hearing * * * [is] thwarted by his absence.' " *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934). There is nothing in the record indicating that Dixon's removal from the courtroom near the end of his sentencing hearing thwarted a fair and just hearing. Dixon had the opportunity to speak and his counsel also spoke on his behalf. Dixon was also present when the trial court made its seriousness and recidivism findings pursuant to R.C. 2929.12 and announced its decision that he would serve a prison term. Dixon does not claim that his physical presence would have changed the outcome of the sentencing, and we fail to see how it would have. We find that Dixon has failed to show that he was prejudiced and that a fair and just hearing was thwarted by his absence. This case does not demonstrate the type of exceptional circumstance where a reversal is necessary to avoid manifest injustice under a plain error standard of review. Therefore, we overrule Dixon's second assignment of error.

{¶ 20} For the foregoing reasons, Dixon's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

_____