[Cite as *State v. Briggs*, 2020-Ohio-4652.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | No. 18AP-679 |
| | | (C.P.C. No. 17CR-1732) |
| Plaintiff-Appellee, | : | No. 18AP-680 |
| | | (C.P.C. No. 17CR-3824) |
| v. | : | No. 18AP-681 |
| | | (C.P.C. No. 17CR-6236) |
| Antoine T. Briggs, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 29, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex.*

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Antoine T. Briggs appeals the August 30, 2018 judgments of the Franklin County Court of Common Pleas following his pleas of guilty and sentencing him in these three cases to an aggregate prison term of 15 years. Briggs asserts three assignments of error. Because we conclude that the trial court's decision to order Briggs to be removed from the courtroom was an abuse of the trial court's discretion, we sustain Briggs' second assignment of error and remand all three cases to the trial court for further proceedings.

{¶ 2} On July 2, 2018 and according to a plea agreement, Briggs pled guilty to aggravated vehicular homicide in Franklin C.P. No. 17CR-1732, possession of cocaine in

Franklin C.P. No. 17CR-3824, and burglary in Franklin C.P. No. 17CR-6236. On August 30, 2018, the trial court held a combined sentencing hearing for the three cases and a community control revocation hearing for Franklin C.P. No. 16CR-5268. Briggs stipulated that there was probable cause for revocation of his probation , and the court proceeded to hear mitigation presentations regarding all four of the cases, and from the victim's wife in the aggravated vehicular homicide case.  Through an interpreter, she testified that her husband had been a good man, that she, his children, and his family back in Africa had all relied on him as a breadwinner, and asked the court to impose more than the maximum sentence of 11 years for the aggravated vehicular homicide.  The last person to present was Briggs, who indicated that he wanted to accept responsibility for having taken someone's life through his bad decisions.

{¶ 3}    After expressing its sympathy to the victim's family, the trial court addressed Briggs:

> THE COURT: Let me say to you, Mr. Briggs, there are very few times when I am supremely irritated with and disgusted by the choices of the defendant, and I am both of those things today. I am irritated with and I am disgusted by your choices. And I will tell you why I am disgusted by your choices. I am disgusted because as I read your presentence investigation report, while you say you do not remember what happened, what you told law enforcement on that night is I don't know, I don't even know who was driving, but it was not me.
>
> You had the presence of mind, even though you don't remember the specifics of this accident, to assign the blame and the responsibility to someone else. And I am irritated by that. What?
>
> THE DEFENDANT: I didn't know what was going on. I was found in the passenger seat, Your Honor.
>
> THE COURT: You had the presence of mind to say I don't know who was driving, but it wasn't me. I don't care where they found you, but that was the statement that you made. And you know

that when you were in the vehicle, were you riding with someone? Or you don't know, that is something else. You don't know, you just know that it wasn't you. I am bothered by that.

I am bothered by the fact that you framed this as an accident. That is something, an accident is something you don't mean to do intentionally. But when you consume alcohol or when you consume illegal drugs and you get behind the wheel of a vehicle, that is an intentional choice that you make to take a chance with your life and with the lives of others. That is not an accident. And I am bothered that you frame it in that way.

Your choice to engage in this behavior has consequences that spread across not only the victim's family, but your family. What are your children supposed to do now? Did you think about that when you were making this choice? Did you? I am asking you.

THE DEFENDANT: No, ma'am.

THE COURT: You didn't think about your children. You didn't think about anybody but yourself. And I am equally bothered by the fact that in your presentence investigation report, you encourage me to consider - - let me find it specifically, because I was amazed that you would even make this statement. "I want the judge to see the pattern. All my criminal activity is because of drugs and alcohol."

I have no responsibility to see the pattern. If you understand that you have that challenge, then it is your responsibility to manage it. What I do here is not a professional baby-sitting service. You know that you make terrible decisions when you drink and use drugs. So why wouldn't it be your responsibility to find a program or to find an alternative so that you are not engaging in criminal activity? Why is that my responsibility to see the pattern? Do you see the pattern?

THE DEFENDANT: Yes, ma'am.

THE COURT: What have you done to address it?

THE DEFENDANT: Nothing.

THE COURT: So then why would I need to address it? I am asking you. Why should I address it if you have taken no responsibility to address it?

THE DEFENDANT: I don't know.

THE COURT: I will answer. I have no responsibility to address it. If it is not important to you, then why should it be important to me?

You seem to have this pattern of assigning blame for your choices to other people and to other circumstances, and that stops today.

Tr. at 46-49.

{¶ 4} The trial court then addressed the sentencing factors set forth in R.C. 2929.12 related to the vehicular homicide case, and found because the victim suffered serious physical, psychological, or economic harm that Briggs' behavior was more serious than conduct normally constituting the offense. The court also found several factors indicating that Briggs was likely to reoffend, and concluded that Briggs' conduct was "the most serious form of the crime" and that he was not amenable to a community control sanction. *Id.* at 56 . The court revoked Briggs' community control release and imposed 11 months with 330 days of jail-time credit for a sentence of time served in Briggs' prior case, and on his 3 plea cases, the court imposed maximum and consecutive sentences, for an aggregate sentence of 15 years in prison:

THE COURT: So that is a total of 15 years of incarceration with the Department of Rehabilitation and Correction. There are 418 days of credit in case 1732, and then there will be zero days in 3824.

THE DEFENDANT: Wow.

THE COURT: So I am also going to immediately find that Mr. Briggs is an obstreperous defendant. I am not going to be disrespected when you have caused complete chaos and confusion across a wide spectrum of lives.

Deputy, he can be removed, since I have imposed the sentence, and I will conclude this without his presence.

THE DEFENDANT: God bless you.

THE COURT: Bless you.

*Id.* at 58.

{¶ 5}     The court completed its sentencing after Briggs was removed from the courtroom, at which point it waived fines and costs but imposed post-release control and a lifetime driver's license suspension. *Id.* at 59-60. After a brief recess, the court reconvened and stated the following:

> THE COURT: We're back on the record in State of Ohio versus Antoine Briggs. There were, again, four cases, 17CR-1732, 17CR-3824, 17CR-6236, 16CR-5268.
>
> The court concluded its sentencing in all four cases. The court actually asked the personnel of the Franklin County [S]heriff's [O]ffice to remove Mr. Briggs from the courtroom as it concluded its final phases of sentencing. Mr. Briggs had become an obstreperous defendant. The law does not require that I maintain his physical presence if he becomes obstreperous. So I had him removed. We are currently on the record, and Mr. Briggs is currently not present in court.

*Id.* at 61.

{¶ 6}     Briggs now appeals, and asserts three alleged errors for review:

> [I.] The trial court committed plain error by imposing consecutive sentences without engaging in the correct analysis required by R.C. 2929.14(C)(4) and R.C. 2929.41(A), and mandated by the Ohio Supreme Court in *State v. Bonnell.*
>
> [II.] The trial court erred when it ordered the defendant to be removed from the courtroom during his sentencing when the defendant had not engaged in any disruptive conduct and had not been warned that he could be removed for disruptive conduct.
>
> [III.] The trial court committed error in not personally informing the appellant of post-release control which requires this matter be remanded for a hearing pursuant to R.C. 2929.191.

{¶ 7}     Because it is dispositive of this appeal, we begin by analyzing Briggs' second assignment of error. The sentencing hearing transcript reveals that the trial judge ordered that Briggs be removed from the courtroom before imposition of his sentence was

completed. The trial court ordered mandatory postrelease control for two of Briggs' offenses and discretionary postrelease control for a third offense, as well as a lifetime driver's license suspension, but imposed these penalties outside of Briggs' presence, after it had ordered him removed from the courtroom. Tr. at 58-59. *Compare State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 23 ("[A] judge must conform to the General Assembly's mandate in imposing postrelease-control sanctions as part of a criminal sentence") and *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, paragraph one of the syllabus ("[w]hen a trial court fails to include a mandatory driver's license suspension as part of an offender's sentence, that part of the sentence is void* * * .")

{¶ 8} A defendant "must be physically present at every stage of the criminal proceeding and trial, including * * * the imposition of sentence * * *." Crim.R. 43(A). *See also* Ohio Constitution, Article 1 Section 10 and United States Constitution, Amendment VI. While a defendant can lose the right to be present based on disruptive behavior, *see* Crim.R. 43(B), prior to ordering removal of a defendant the judge must give the defendant a warning that if the disruption continues it will result in removal. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom"), cited in *State v. Dixon*, 10th Dist. No. 17AP-884, 2018-Ohio-3759, ¶ 16.

{¶ 9} Briggs' hearing transcript clearly demonstrates that the trial court did not give him any such warning prior to ordering his removal. Further, the hearing transcript does not demonstrate any pattern of disruptive behavior prior to the trial court's decision to order his removal. The state argues that we should infer that Briggs was behaving badly

in some way not reflected in the transcript. But the transcript does not support the state's contention that Briggs acted inappropriately or that the sentencing as a whole had a combative atmosphere. And although the transcript does not capture tone or body language, our review of the transcript in its totality shows that Briggs at no time said anything inappropriate. When Briggs expressed surprise at the length of his sentence, instead of warning him that his behavior was not appropriate, the trial judge took it personally; she immediately stated that she was "not going to be disrespected" and ejected him from the courtroom. Tr. at 58. Being "supremely irritated" and "disgusted" by Briggs' criminal behavior, and feeling "disrespected" by him, without more, does not justify the violation of his right to be present at a critical stage of his criminal proceedings.

{¶ 10} Briggs' second assignment of error is sustained. And because this ruling requires a remand for a new sentencing hearing, Briggs' remaining assignments of error addressing other potential irregularities in the original sentencing hearing are rendered moot. For these reasons, we reverse and remand the judgments of the Franklin County Court of Common Pleas.

*Judgments reversed and remanded.*

Nelson, J. concurs; Brunner, J. concurring separately.

_____

BRUNNER, J., concurring separately.

{¶ 11} I respectfully write separately to ensure that in this decision we address other issues of importance for the sake of legal, conceptual clarity and to avoid future problems, all associated with felony sentencing.

## I. INTRODUCTION

{¶ 12} The majority has determined to sustain Briggs' second assignment of error and, based on the need for resentencing, find the other assignments of error to be moot. I

concur in the majority's judgment regarding the second assignment of error and the majority's conclusion that the necessity of a resentencing renders the other assignments of error moot.  However, I write separately because, in my view, the first assignment of error presents a significant issue that merits review and resolution.  Once resolved, it would render the second and third assignments of error moot.

## II. DISCUSSION

{¶ 13} In the first assignment of error, Briggs alleges, "[t]he trial court committed plain error by imposing consecutive sentences without engaging in the correct analysis required by R.C. 2929.14(C)(4) and R.C. 2929.41(A), and mandated by the Ohio Supreme Court in *State v. Bonnell*."  I agree.

{¶ 14} Generally there is a presumption that sentences imposed "shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A).  However, that presumption of concurrent terms may be overcome if the trial court finds that the offender meets the criteria set forth in R.C. 2929.14(C)(4):

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 15} The trial court must make R.C. 2929.14(C)(4) findings at sentencing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings nor must it recite certain talismanic words or phrases in order to be considered to have complied. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus; *State v. Howze*, 10th Dist. No. 13AP-386, 2013-Ohio-4800, ¶ 18. We have repeatedly held that, "sentencing consecutively without first overcoming the presumption that sentences are to be imposed concurrently 'is contrary to law and constitutes plain error.' " *State v. Greene*, 10th Dist. No. 17AP-667, 2018-Ohio-3135, ¶ 15, quoting *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 18, citing *State v. Boynton*, 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 12; *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18; *see also State v. Marcum*, 10th Dist. No. 18AP-249, 2019-Ohio-1019, ¶ 14.

{¶ 16} In this case, all three of the judgment entries (for aggravated vehicular homicide, cocaine possession, and burglary) in the record included boilerplate findings tracking the statutory language of R.C. 2929.14(C)(4), and Briggs has not contended that the judgment entries are defective. (Aug. 30, 2018 Jgmt. Entry 17CR-1732 at 2; Aug. 30, 2018 Jgmt. Entry 17CR-3824 at 2; Aug. 30, 2018 Jgmt. Entry 17CR-6236 at 2.) Instead, Briggs challenges whether what the trial court said at sentencing sufficiently indicated that it genuinely made the proportionality finding required by R.C. 2929.14(C)(4) to overcome the presumption for concurrent sentences. (Briggs' Brief at 5-20.)

{¶ 17} Nowhere in the transcript does the trial court find or paraphrase the finding, "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4); *see also* Plea & Sentencing Tr. at 46-58. To counter this observation, the State has asserted that the trial court made clear that it was swayed by the seriousness of Briggs' conduct. (State's Brief at 5-8.) The State has argued that the trial court's statements of outrage are sufficient to infer that the trial court made the necessary proportionality finding. *Id.* Precedent instructs otherwise.

{¶ 18} In S*tate v. Beasley*, the State argued that the Supreme Court of Ohio should "discern" the trial court's views on proportionality from statements about the fact that the

defendant had committed murders with weapons that he was not supposed to have had and that "consecutive sentences [we]re necessary to protect the public." 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 257-59. However, the state's high court declined to make this leap, noting that the trial judge's statement "reveal[ed] nothing about the court's proportionality analysis with respect to the [other crimes Beasley committed], and the sentences for those convictions were also ordered to be served consecutively." *Id.* at ¶ 258. The Supreme Court found that the trial court had not made the required finding on proportionality, and reversed and remanded the case for a resentencing hearing. *Id.* at ¶ 260-62.

{¶ 19} Viewing the record on appeal, I see no evidence that the trial court made the necessary legal findings to impose maximum consecutive sentences in Briggs' three cases. *See* R.C. 2929.14(C)(4); R.C. 2929.12. The trial judge very adequately analyzed the vehicular homicide case, finding no mitigating factors and finding one factor (that the victim suffered serious physical, psychological, or economic harm) that indicated Briggs' behavior in relation to the aggravated vehicular homicide was more serious than conduct normally constituting the offense. (Plea & Sentencing Tr. at 49-56.) However, contrary to the requirement of *Beasley*, there is no indication in the record that the trial court developed or considered the statutorily required findings in the other two cases to support imposing maximum consecutive sentences for all three of these cases. *Id.* at 57-58. The only mention of the facts underlying the cocaine possession offense was during the plea hearing at which the prosecutor indicated that 0.179 grams of cocaine were found on Briggs' person when he was searched incident to an arrest on a warrant in September 2016. *Id.* at 22. The trial court did not explain at sentencing why it imposed a maximum consecutive sentence for the cocaine possession, other than a bare statement, without factual support for finding it was "the most serious form of the offense." *Id.* at 57. With respect to the burglary, the prosecution reported that the case involved a burglary of a residence at which a television, computers, sunglasses, and cellular telephones were stolen. *Id.* at 22-23. The trial court cited the presentence investigation report as evidence that an unknown person (whom the trial court seemed to infer was Briggs) had sent a threatening letter to the victim. *Id.* at 57-58. However, again, the trial court did not enunciate any statutory supportive language for concluding at sentencing that this burglary offense merited a maximum sentence and should be imposed consecutively to the other two sentences. *Id.*

{¶ 20} In short, while the trial judge did spend substantial time discussing the severity of the conduct in the aggravated vehicular homicide case, the trial judge did not make the necessary findings to justify maximum consecutive sentences in *all three* cases. To quote *Beasley*, the trial judge's comments in this case "reveal[ed] nothing about the court's proportionality analysis with respect to the [other crimes Briggs committed], and [yet,] the sentences for those convictions were also ordered to be served consecutively." *Beasley* at ¶ 258. The trial court's words reflecting her personal views about Briggs and that he had disrespected her are inadequate to meet the statutory requirements for consecutive sentencing. Nor are those in-court statements a substitute for consideration, review, and some form of discussion of the statutory factors that would justify imposing maximum consecutive sentences. (Plea & Sentencing Tr. at 46, 58.)

{¶ 21} The State asserts that there is a "nearly [] identical situation" that results in a different outcome in *State v. Dixon*, 10th Dist. No. 17AP-884, 2018-Ohio-3759. (State's Brief at 7.) While there are certain similarities between this case and *Dixon* (involving the same trial judge and an abrupt exclusion of a defendant from the courtroom), there is one vital distinction from the issue raised by the first assignment of error here: The defendant in *Dixon* was being sentenced in *just one case* involving two counts that were both part of a single incident of domestic violence. *Dixon* at ¶ 2-3. Specifically, in *Dixon,* the trial court stated, "Dixon assaulted the victim when she came to pick up their children and then pursued her when she was able to get away from him. He rear-ended her vehicle and forced her to pull over. Dixon proceeded to beat her a second time. All of this was done in the presence of their three young sons." *Id.* at ¶ 12. Because the trial judge discussed the severity of the *single* incident, we decided the trial court had adequately indicated that it tacitly found that consecutive sentencing for the offenses arising from the incident would not be disproportionate to the severity of the offender's conduct. *Id.* at ¶ 10; R.C. 2929.14(C)(4). Here, however, Briggs was being sentenced on *three* cases (four, counting probation revocation). (Plea & Sentencing Tr. at 28.) The trial court was quite clear about how outraged it was about one of the cases. *Id.* at 45-56. But, it essentially did not express sufficient statutorily required similar support for consecutive sentencing relating to the other two cases, despite imposing maximum consecutive sentences for all of them. *Id.* at

57-58.  Under *Beasley*, this is error and distinguishes this case from *Dixon*. *Beasley* at ¶ 258.

### III.  CONCLUSION

{¶ 22}  Rather than avoid the first assignment of error in favor of resolving the case on the second assignment of error, I would squarely address what I view to be an error of greater concern, the first assignment of error.  Although I concur in the majority's analysis of the second assignment of error, because I would have resolved the case on the first assignment of error, I write separately to express my differing viewpoint.

_____